IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RHONDA J. EPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 08-2349-CM-GBC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A)(hereinafter the Act). Finding error as alleged by plaintiff, the court recommends the Commissioner's decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

## I.   Background

On March 9, 2005, plaintiff applied for SSI, alleging disability beginning May 1, 1999. (R. 20, 63-72). Plaintiff's application was denied initially and upon reconsideration, and

plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 20, 32, 33, 44).  ALJ Guy E. Taylor held a hearing at which plaintiff was represented by counsel, and testimony was taken from plaintiff and a vocational expert.  (R. 20, 319-58).

On January 23, 2008, the ALJ issued a decision in which he found plaintiff is not disabled within the meaning of the Act, and denied plaintiff's application.  (R. 20-31).  He found plaintiff has not engaged in substantial gainful activity since her alleged onset date and that plaintiff has "severe" impairments consisting of a major depressive disorder and atherosclerotic disease, but that all of her impairments considered in combination do not meet or equal the severity of any impairment in the Listing of Impairments.  (R. 21).

The ALJ discussed plaintiff's allegations regarding the severity of her symptoms, summarized the evidence of record, and considered the medical source opinions.  (R. 21-28).  He found plaintiff's allegations not credible (R. 28, 30); accorded "little weight" to the opinions of the treating sources, Dr. Barnes and Dr. King (R. 27-28), and to the opinion of the non-treating source, Dr. Schlosberg (R. 26); and accorded "weight" to the "findings, opinions, and assessments of the non-examining State agency program medical consultants and program psychologists."  (R. 29).  He assessed plaintiff with the residual functional capacity (RFC) to lift and carry twenty

pounds occasionally and ten pounds frequently, with no pushing or pulling limitations, but reaching and handling allowed only occasionally; and to sit, and to stand or walk, no more than four hours each in an eight-hour workday with a sit/stand option.  (R. 28).  He determined plaintiff has certain postural and environmental limitations, and is limited to "simple, unskilled work, with only limited contact with the general public."  Id.

Based upon the RFC assessment and the testimony of the vocational expert, the ALJ determined plaintiff is unable to perform her past relevant work.  (R. 28).  Nonetheless, he determined plaintiff is able to perform certain light, unskilled work which affords a sit/stand option, and is represented by jobs such as a photocopy machine operator, a children's attendant, or a microfilm processor.  (R. 29).  Based upon these findings, the ALJ determined plaintiff is not disabled within the meaning of the Act, and denied her application for SSI benefits.  Id.

Plaintiff alleged errors in the ALJ's decision and sought review by the Appeals Council.  (R. 14).  The Council considered plaintiff's arguments, but found no reason to review the ALJ's decision, and denied review.  (R. 8-10).  Therefore, the ALJ's decision is the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

-3-

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which

prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

-5-

After assessing claimant's RFC, the Commissioner evaluates
steps four and five--whether the claimant can perform her past
relevant work, and whether she is able to perform other work in
the economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through
four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
<u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical
opinions regarding mental limitations, in evaluating the
credibility of plaintiff's allegations, and in assessing
representative jobs of which plaintiff is capable.  The
Commissioner argues that the ALJ properly weighed the medical
opinions and properly found plaintiff's allegations only
partially credible, and that although two of the representative
jobs presented by the ALJ are not within plaintiff's RFC, the
error is harmless because plaintiff nonetheless has the
capability to work as a children's attendant.

**III. Evaluation of Medical Opinions Regarding Mental Impairments**

Plaintiff claims with regard to the limitations produced by
her mental impairments, that the ALJ "relied primarily upon the

-6-

findings of the [nonexamining][1] state agency physician [(Dr. Blum)] to the detriment of conclusions reached by Plaintiff's treating psychologist [(Dr. Barnes)], her primary care [treating] doctor [(Dr. King)], and a[ nontreating][1] psychologist [(Dr. Schlosberg)].[2]"  (Pl. Br. 14-15)(citation omitted).  She claims the error occurred despite the legal standard relating to weighing medical source opinions and despite the fact Dr. Blum was the only medical source who opined plaintiff had such minimal mental limitations which would allow work.  Id. at 15.

---

[1]Plaintiff refers to these medical sources as "the reviewing state agency physician," and "an examining psychologist."  (Pl. Br. 14, 15).  The court prefers to use the terms describing acceptable medical sources which are defined in the regulations:

"Treating source:"  a medical source who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.
"Nontreating source:"  a medical source who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  a medical source who has not examined the claimant, but provides a medical opinion.  Id.

[2]The court has added the names of the physicians and psychologists at issue for the sake of clarity.  Although plaintiff does not name the physicians and psychologists at this point in her brief, the record and the parties' briefs make clear that these are the doctors whose opinions are at issue.  The court notes that Dr. Blum is a psychologist, not a physician, but that fact is immaterial to the court's opinion.  Both a physician and a psychologist are acceptable medical sources within the meaning of the regulations, and plaintiff later acknowledged that Dr. Blum is a psychologist.  (Pl. Br. 15)("The reviewing state agency psychologist stood alone in finding Plaintiff's mental impairments only prohibited interaction with the public)(citing (R. 193)).

The Commissioner argues that the ALJ properly evaluated the medical opinions.  He acknowledges that a treating source opinion may be given controlling weight and is generally given the most weight, and that the opinion of a nontreating source is generally given more weight than the opinion of a nonexamining source. (Comm'r Br. 15-16).  He argues, however, that substantial evidence in the record as a whole supports the ALJ's decision to accord greater weight to Dr. Blum's opinion and lesser weight to the opinions of Drs. Barnes, King and Schlosberg.  Id. at 17-20. The court finds the ALJ's determination with regard to medical opinions is not supported by substantial evidence in the record as a whole.

### A.    Standard for Evaluating Medical Opinions

Both parties agree regarding the standard for evaluating medical opinions, and the court provides but a brief summary of the relevant standard.  Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. § 416.927(d); Social Security Ruling (hereinafter SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009).  A treating source opinion is expected to reflect greater insight into a patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of [a nontreating

source] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources who have examined the claimant are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and whether the opinion is consistent with other substantial evidence in the record.  Id. at 1300 (quoting SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, however, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527

-9-

and 416.927." Id.  After considering the factors, the ALJ must
give reasons in the decision for the weight he gives the treating
source opinion.  Id. 350 F.3d at 1301.  "When a treating
physician's opinion is inconsistent with other medical evidence,
the ALJ's task is to examine the other physicians' reports 'to
see if [they] 'outweigh[]' the treating physician's report, not
the other way around.'"  Goatcher v. Dep't of Health & Human
Serv., 52 F.3d 288, 290 (10th Cir. 1995)(quoting Reyes v. Bowen,
845 F.2d 242, 245 (10th Cir. 1988)).  "Finally, if the ALJ
rejects the opinion completely, he must then give 'specific,
legitimate reasons' for doing so."  Watkins, 350 F.3d at 1301
(citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)
(quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.    The ALJ's Weighing of the Medical Opinions Regarding Mental Impairments and Limitations

Here, the ALJ summarized the evidence regarding plaintiff's
mental condition, and the medical opinions regarding plaintiff's
mental condition provided by Dr. Barnes, plaintiff's treating
psychologist; Dr. Schlosberg, a nontreating psychologist who
performed a consultative psychological evaluation; and Dr. King,
plaintiff's treating primary care physician.  (R. 25-27).  The
ALJ accorded "little weight" to Dr. Schlosberg's opinion:
(1) because it is not consistent with the totality of the
evidence, (2) because the opinion is based upon only a one-time
evaluation and plaintiff's one-time report to Dr. Schlosberg,

-10-

(3) because plaintiff "has had very sporadic mental health treatment," (4) because plaintiff has not been psychiatrically hospitalized, (5) because the opinion is not consistent with plaintiff's demonstrated level of functioning (grocery shopping, care for five children and a disabled husband), and (6) because Dr. Schlosberg's mental status examination showed adequate attention and concentration.  (R. 25-26).  The ALJ also accorded "little weight" to the opinion of Dr. Barnes:  (1) because the opinion is not supported by the totality of the evidence, (2) because the opinion is not supported by Dr. Barnes treatment records, (3) because the opinion is not consistent with plaintiff's demonstrated level of functioning (care for five young children and a disabled husband, able to grocery shop), and (4) because it is an opinion on the ultimate issue of disability, which is reserved to the Commissioner.  (R. 27).  Finally, the ALJ accorded "little weight" to Dr. King's opinion regarding plaintiff's mental limitations because "[(1)] Dr. King is not a mental health professional, and [(2)] his opinion and assessment of mental limitations for claimant is not supported by the mental health treatment records."  Id. at 27.

     After summarizing Dr. Schlosberg's examination and opinion, the ALJ noted that his determination is not bound by the findings of state agency consultants such as Dr. Schlosberg, "or other program physicians or psychologists."  (R. 25).  In his

evaluation of the evidence, the ALJ did not specifically
summarize or discuss the opinion of Dr. Blum regarding
plaintiff's mental impairments or the limitations resulting
therefrom.  However, in the last paragraph of his "Evaluation of
the Evidence," before listing his "Findings," the ALJ noted that
SSR 96-6p requires an ALJ to consider the opinions of "State
agency medical consultants and program physicians and
psychologists."  (R. 29).  The ALJ stated:

> The undersigned has considered the findings, opinions,
> and assessments of the non-examining State agency
> program medical consultant and program psychologists
> (Exhibits 6-F, 7-F and 10-F), and has accorded them
> weight in reaching the conclusion that claimant is not
> disabled, because they are generally consistent with
> and supported by the findings, opinions, and
> conclusions of treating and medical sources contained
> in the record.

Id.

### C.    Analysis

The ALJ's findings regarding the medical opinions relating
to plaintiff's mental impairments are not supported by
substantial evidence in the record as a whole.  First, while
plaintiff's treatment for her physical ailments might properly be
called "sporadic," the same cannot be said regarding mental
health treatment.  In summarizing the medical opinions, the ALJ
stated, "claimant has had very sporadic mental health treatment
during the period in question."  (R. 27).  The ALJ's statement is
not supported by the record.  Dr. King began treating plaintiff

for psychological factors at least by October, 1, 2004.  (R.
175).  Dr. Barnes first saw plaintiff on February 18, 2005 (R.
178), and the record reveals she was treating plaintiff
continuously thereafter with a frequency approximating twice a
month.  (R. 227-74).  This is simply not indicative of "sporadic"
mental health treatment.  Moreover, while the record does not
reveal specific mental health treatment, if any, before October,
2004, that fact may go to the onset date of any resulting
disability but does not establish that plaintiff has had
"sporadic" mental health treatment.

        In this instance, the court feels it is particularly
important to look at the record as a whole in evaluating the
medical opinions because of "the necessarily incremental effect
of [each individual medical source's] report on the aggregate
assessment of the evidentiary record."  Lackey v. Barnhart, No.
04-7041, 127 Fed. Appx. 455, 459 (10th Cir. Apr. 5, 2005).  An
ALJ or the court may not look at medical opinions in isolation,
but they must be considered in light of the other medical
opinions and the entire evidentiary record.  Schreffler v.
Astrue, No. 08-1200-WEB, slip op. at 10-11, (D. Kan. May 28,
2009) adopted by the District Court (Aug. 4, 2009).

        Here, the ALJ discounted the opinions of Drs. Schlosberg,
Barnes, and King, in part, because plaintiff has not been
hospitalized for psychiatric problems; because the opinions are

inconsistent with plaintiff's demonstrated level of functioning (caring for five children and her disabled husband, and grocery shopping); and because Dr. King is not a mental health professional.  Nowhere in the decision did the ALJ cite to any authority, whether medical or legal, for the propositions:  that psychiatric hospitalization is a necessary prerequisite to a finding that mental limitations preclude gainful work; that an individual who performs some general care tasks for a disabled husband and five children (the <u>youngest</u> of whom is seven) and also does grocery shopping is functioning at a level sufficient to engage in gainful work eight hours a day, five days a week; or that a physician who is not a psychiatrist or a psychologist, but who is treating a patient for mental health issues, is not qualified to formulate an opinion regarding the patient's mental limitations.

The court agrees in general with the Commissioner's premises that a person who has been hospitalized for psychiatric issues may be in a worse condition than a person who has not; that a person who cannot do grocery shopping or provide any care for a disabled husband and five children over the age of seven may be in a worse condition than a person who can; or that a medical source who specializes in mental health treatment may be better able to support an opinion regarding the capabilities of a patient who is suffering from mental impairments than a medical

source who is not a mental health specialist.  However, in this case Dr. Barnes and Dr. Schlosberg are mental health professionals, and Dr. King is plaintiff's primary care physician.  Drs. Barnes and King are treating sources who have had a treating relationship with plaintiff from at least February 2005 through 2007.  Dr. Schlosberg is a nontreating source who examined and tested plaintiff for the Commissioner and prepared a report based upon that examination and testing.  Each of these medical sources is aware plaintiff has not been psychiatrically hospitalized and cares for children and her husband, and (with the possible exception of Dr. Schlosberg) each knows that plaintiff does grocery shopping.  Nonetheless, each independently formulated a medical opinion regarding limitations resulting from mental impairments, which is in at least general agreement with the others' opinions, and each opinion would necessarily result in a finding that plaintiff cannot perform work on a continual basis.  The record, when considered as a whole as the court must, does not provide sufficient evidentiary basis to find these three factors justify discounting the medical opinions at issue.

The ALJ discounted the opinions of Drs. Barnes and Schlosberg, respectively, in part because the opinions are "not supported by the totality of the medical record" (R. 27), or are "not consistent with the totality of the evidence."  (R. 25).  If these reasons mean that the evidence or the medical record "as a

whole" does not support the doctors' opinions, the ALJ did not point to specific evidence or medical records which do not support or are not consistent with the opinions, and did not explain how the weight of the evidence or the medical records "as a whole" is inconsistent with or does not support the opinions despite that evidence and the portions of the medical records which admittedly <u>do support</u> the opinions.

If, on the other hand, these reasons mean that some, but not <u>all</u> of the evidence and the medical records are consistent with or support the opinions, that is admittedly true, but it is not the standard to be applied in evaluating medical opinions.  It is a rare Social Security case indeed where <u>all</u> of the evidence and <u>all</u> of the medical records support or are consistent with a single medical opinion or a group of medical opinions.  If that were the standard, in the vast majority of cases it would be impossible to accord weight to <u>any</u> medical opinion because in almost all cases the evidence and the medical records are equivocal in at least some respects and are not entirely consistent with or supportive of <u>any</u> individual medical opinion. For instance, in the case at hand, if uniform support were the standard Dr. Blum's opinion could not be accorded weight because it is inconsistent with and unsupported by the opinions of Drs. Schlosberg, Barnes, and King.

In his brief, the Commissioner apparently attempted to overcome the ALJ's failure (to point out specific evidence or specific medical records which are inconsistent with or unsupportive of the opinions of Drs. Schlosberg and Barnes) by citing to evidence which in his view is inconsistent with or unsupportive of the opinions.  (Comm'r Br. 17-20).  Although some of the evidence cited by the Commissioner was summarized in the decision; as noted above, the ALJ did not point to that or any other evidence as specifically inconsistent with or unsupportive of the opinions, and did not explain how the evidence detracted from the doctors' opinions.  The court may not reweigh the evidence, Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996), and when it accepts a rationale presented by the Commissioner which was not relied upon by the ALJ, it runs the risk of improperly engaging in post-hoc justification of the decision. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  The court may not accept the rationale supplied by the Commissioner or provide its own rationale for the ALJ's decision.

The ALJ discounted Dr. Schlosberg's opinion because Dr. Schlosberg's mental status examination showed adequate attention and concentration, discounted Dr. Barnes opinion because it was not supported by Dr. Barnes's own mental health treatment records, and discounted Dr. King's opinion because it was not

-17-

supported by the mental health treatment records.  (R. 26, 27).
While Dr. Schlosberg's mental status examination and the mental
health treatment records of Dr. Barnes do not present a uniform
impression that plaintiff is incapable of work due to mental
limitations, neither do they present a uniform impression that
plaintiff's mental limitations are so mild that she is able to
engage in substantial gainful activity on a continual basis.  Dr.
Schlosberg was aware of his examination findings, and Dr. Barnes
was aware of her treatment records.  Each of these psychologists
formulated an opinion regarding plaintiff's limitations based
upon the findings made.  Whether the findings support the opinion
is a question which each psychologist has the medical expertise
to answer for him or her self, and absent medical authority, the
ALJ may not assert his own lay opinion to the contrary.  "An ALJ
may not make speculative inferences from medical reports and may
reject a treating physician's opinion outright only on the basis
of contradictory medical evidence and not due to his or her own
credibility judgments, speculation or lay opinion."  McGoffin v.
Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)(quotation omitted;
emphasis in original).

      In a Social Security case, weighing the evidence and
discerning whether the medical opinions are adequately supported
by that evidence is the unenviable task of the ALJ.  As discussed
above, the court may not weigh the evidence.  The ALJ's weighing

-18-

of the evidence, however, is subject to the legal standard established in the statutes, the regulations, and the Commissioner's Rulings as interpreted by the courts.  He may not merely pick a medical opinion with which he chooses to agree.

As the Commissioner argued in his brief, Dr. Blum provided rational for his medical opinion which calls into question the opinion of Dr. Schlosberg.  (Comm'r Br. 18)(citing (R. 209)). Moreover, Dr. Blum's rationale can be viewed as providing a basis to question Dr. Barnes's opinion.  (R. 207, 209).  The ALJ accorded weight to Dr. Blum's opinion, and appears to have accepted Dr. Blum's assessment of plaintiff's mental limitations. However, he did not specifically mention Dr. Blum's opinion, and did not engage in specific relative weighing of all of the medical opinions.  He did not explain how the evidence supports a finding that Dr. Blum's opinion outweighs the opinions of the treating sources, Dr. Barnes and Dr. King, and the opinion of the nontreating source, Dr. Schlosberg.  He merely stated in a single sentence his finding that he accorded Dr. Blum's opinion weight because it is "generally consistent with and supported by the findings, opinions, and conclusions of treating and medical sources."  (R. 29).  With regard to plaintiff's mental impairment, contrary to the ALJ's assertion, and as discussed herein, Dr. Blum's "findings, opinions, and assessments" are <u>not</u> "generally consistent with and supported by the findings,

opinions, and conclusions" of <u>most</u> of the mental health treating and medical sources contained in the record--specifically, Drs. Schlosberg, Barnes, and King.  (R. 29).

In contrast to the aggregate weight of the three independent opinions of Drs. Schlosberg, Barnes, and King, Dr. Blum is the <u>only</u> medical source who has formulated an opinion regarding plaintiff's mental limitations which would result in a finding that plaintiff has the capacity for gainful work on a continual basis.  Yet, Dr. Blum is a nonexamining source psychologist.  He formulated his opinion based merely upon a review of the record as it was constituted when he recorded that opinion on June 6, 2005.  (R. 191-209).  Nonetheless, the ALJ accorded "little weight" to the three generally consistent opinions of the treating and nontreating sources and "accorded . . . weight" to the contrary opinion of Dr. Blum.[3]  (R. 26, 27, 29).

The court does not intend to imply that an ALJ may never accord greater weight to the opinion of a nonexamining source than to the opinion of a treating source or of a nontreating

---

[3]The court is aware that plaintiff was examined and apparently treated in July and August, 2005 by a Psychiatrist, Dr. Carolina.  (R. 218-24).  However, the ALJ did not mention this treatment in the decision, and the court finds nothing in Dr. Carolina's records which would add significant support of, or contradiction to, the opinions of Drs. King, Barnes, and Schlosberg.

The court is also aware that Dr. Blum's opinion was reviewed and affirmed by another program psychologist, but that review is a single-page, check-the-box form which provides nothing additional support for Dr. Blum's analysis.  (R. 226).

source.  However, when he does so he must explain why, and must support his finding with substantial evidence from the record. Talbot, 814 F.2d at 1464; Broadbent, 698 F.2d at 414.  In a case such as this, where the opinions of two treating sources and of a nontreating source are in general agreement and are in direct conflict with the opinion of a single nonexamining source, the requirement for an explanation supported by substantial evidence is no doubt heightened.  Broadbent, 698 F.2d at 412.  Remand is necessary for the Commissioner to properly weigh each medical opinion in light of the other medical opinions and the entire evidentiary record, and to explain the weight given to each opinion, and how the evidence supports his determination.  If he is to find that Dr. Blum's opinion outweighs the combined opinions of Dr. Schlosberg, Dr. Barnes, and Dr. King, he must explain the evidentiary basis for that finding, and the specific reasons for discounting the opinions.

The ALJ's error in evaluating the medical opinions requires remand in this case, and the court need not discuss plaintiff's remaining allegations of error.  However, in the hope of preventing unnecessary errors on remand, the court feels compelled to address plaintiff's remaining allegations of error. As discussed above, it was error for the ALJ to find plaintiff's mental health treatment was sporadic, and the Commissioner should not rely upon that as a basis to discount the credibility of

plaintiff's allegations on remand.  Plaintiff may make further credibility arguments to the Commissioner on remand if she desires to do so.

## IV.  Step V

Plaintiff claims the ALJ erred at step five of the sequential evaluation process in assessing representative jobs of which plaintiff is capable.  She claims the ALJ limited plaintiff to occasional reaching and handling, but that two of the representative jobs suggested by the vocational expert, photocopy machine operator and microfilm processor, require <u>frequent</u> reaching and handling.  (Pl. Br. 25).  The Commissioner acknowledged the ALJ made this error, but argues that it is harmless because plaintiff can work as a children's attendant. (Comm'r Br. 24-25).

With regard to the representative job as a children's attendant, plaintiff claims that job is unavailable because the ALJ determined plaintiff can have only limited contact with the general public, and children are members of the general public. (Pl. Br. 26).  The Commissioner argues that "it is quite clear from the record that Plaintiff's limited ability to interact with the general public would not preclude her from working as a children's attendant," because plaintiff "spends the majority of her day providing childcare for her daughter, nieces, and nephews."  (Comm'r Br. 24).

-22-

As the parties' briefs suggest, at the hearing the ALJ and the vocational expert discussed whether the requirement for limited contact with the public would preclude work as a children's attendant.  After the expert testified that an individual with plaintiff's RFC could perform work as a photocopy machine operator, the ALJ asked if there were other jobs of which such a person would be capable.  The expert responded:

> A.    Your Honor, yes, there are.  Now when you say limited exposure to the general public, would that preclude, in your opinion, children's attendant? I mean, I know children are general public, but children, for instance, they come into a grocery store and require watching.  Would that --

> Q.[By ALJ]    No that would not preclude that.  What I'm talking about is someone that -- such as a cashier, somebody like that that would have to deal with people throughout the day.

> A.    Okay.  Thank you for that explanation.  Then it would be my opinion that the job title of children's attendant would be appropriate.

(R. 352).

Here, the evidence establishes that plaintiff is able to get along with her family, her friends and relatives, her children, and her husband, but not the public.  (R. 92-94, 96, 101-04, 114, 124-26, 146, 157, 185, 192-93, 207, 209, 278-80, 281-83).  Based upon this evidence the ALJ determined plaintiff is restricted to only limited contact with the general public.  Neither at the hearing nor in the decision did the ALJ explain how the record evidence establishes that plaintiff is able to have eight hour a

day, five day a week contact with children in the public arena, despite a restriction to only limited contact with the general public. Moreover, it appears to the court that if plaintiff is a children's attendant, she will also be required to interact with the children's parents and/or guardians, which involves more than limited contact with the general public. Lacking some explanation in the decision, the ALJ's distinction does not make sense. On remand, if the Commissioner determines plaintiff is restricted to limited contact with the general public but that plaintiff is able to work as a children's attendant, he must explain this ambiguity.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 12th day of August 2009, at Wichita, Kansas.


                                    **s/   Gerald B. Cohn**
                                    **GERALD B. COHN**
                                    **United States Magistrate Judge**